UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES J. FOSTER,
Plaintiff,

v.                                    Case No. 5:24-cv-460-TJC-PRL

SUMTER LANDING COMMUNITY DEVELOPMENT DISTRICT, VILLAGE
CENTER COMMUNITY DEVELOPMENT DISTRICT, and DAVID WILLIAMS,
Defendants.

─────────────────────────────────────────────────────────

LEGAL MEMORANDUM OF PLAINTIFF, JAMES J. FOSTER, RESPONDING TO
MOTION OF DEFENDANTS TO DISMISS SECOND AMENDED COMPLAINT

## Procedural History

I brought this action in Florida state court, asserting (in the Amended
Complaint) three state law claims, but no federal claims. After that filing, I
continued to research the law, and in late July I came across the Eleventh Circuit's
decision in *Deweese v. Town of Palm Beach*, 812 F.2d 1365 (1987) (discussed further
below). *Dewees*e, on facts similar to those presented here, found a violation of 42
U.S.C. §1983 for a deprivation of rights under the Due Process Clause of the
Fourteenth Amendment to the United States Constitution.

Seeing that the case could govern the outcome here, I moved to file a Second
Amended Complaint ("SAC"), which would add a Fourth Claim based specifically
on *Deweese* (the "*Deweese* claim"). After Defendants consented to the Motion, the

court granted it, and I filed the SAC, Doc. 1-1.

Although the SAC included only a single federal claim — the *Deweese* claim — Defendants removed the entire action, asserting this Court has supplemental jurisdiction of the state law claims, under 28 U.S.C. §1367(a). Defendants argued the state law claims are part of the same case or controversy as the federal claim.

For the record, I agree removal was proper and this Court has supplemental jurisdiction.

## The Motion to Dismiss

Defendants now move to dismiss the SAC under FRCP 12(b)(6) for failure to state a cause of action. Doc. 9 ("Mot."). Before removal, Defendants had filed a similar motion, Doc. 1-3, pp. 66-77, directed to the Amended Complaint, which complaint had included only the state law claims. I filed a Memorandum in Opposition to that Motion, Doc. 1-3, pp. 78-91, but the action was removed before the state court could decide it.

## Legal Standards

In deciding a rule 12(b)(6) motion, the trial court must confine the review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept as true all well-pleaded allegations. *Speaker v. U.S. Dept. of Health & Human Services*, 623 F.3d 1371, 21379 (11th Cir. 2010); *Quality Auto Painting Ctr. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). The allegations must state

a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Facts

In deciding the motion, all facts pleaded in the SAC must be assumed as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Holland v. Carnival Corporation*, 50 F. 4th 1088, 1092n.1 (11th Cir. 2022). I summarize the most relevant below.

The "CDD Defendants" (Sumter Landing Community Development District and Village Center Community Development District) are governmental entities that own various 9-hole "municipal" Executive Golf Courses in The Villages, Florida. ¶¶3, 5.[1]

I am a resident of a different, residential Community Development District (CDD 6) and am legally required to pay to it amenity fees, currently in the amount of $2322 per year, for the use of the Executive Golf Courses and other amenities. ¶7. In return for payment of those fees, I receive the right to use the Executive Golf Courses. Pursuant to express written contracts between CDD 6 and the CDD Defendants, the former pays over to the latter a portion of those fees in return for the CDD Defendants' granting me (and other residents who pay amenity fees) access to the Executive Golf Courses. ¶7-8.

---

[1] All references in this Memorandum to paragraph numbers (¶) are to paragraphs from the SAC.

Defendant Williams is the Executive Director of Golf Operations for the CDD Defendants. ¶4. Despite the contractual obligation to allow access, he has directed employees under his control to confront, and to bar or remove from the Executive Golf Courses, male golfers with shirts that do not have collars. ¶17. I have been confronted by Williams's employees who have told me they will bar me from the Executive Golf Courses —even on the hottest days of the year —simply because my shirt does not have a collar. ¶19.

During the summer heat, when afternoon temperatures are mostly in the 90s with high humidity, this collar mandate creates health dangers and unacceptable health risks for me and other elderly residents of The Villages. ¶20-22. No proper governmental purpose is served by barring me from the Executive Golf Courses because my shirt does not have a collar. ¶23. Whether my shirt has a collar has no effect on the operation of the Executive Golf Courses, nor does barring me from the courses benefit the public health, safety, or welfare, or affect the well-being of others on those courses. Id. As a factual matter, the challenged conduct of Williams and the CDD Defendants is thus arbitrary and capricious. ¶¶24-25.

## ARGUMENT

### The Federal Claim

I will discuss the *Deweese* claim first, because it is the only basis for this Court's jurisdiction. If the Court dismisses that federal claim, the Court would not

necessarily reach the state law claims, because the Court would have discretion to remand them to the state court without prejudice without discussing their merits. 28 U.S.C. §1367(c)(3); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296-97 (11th Cir. 2018).  To resolve that threshold issue, this Memorandum will thus discuss the *Deweese* claim separately from the state law claims.

**A. The Fourth Claim states a claim under *Deweese* for violation of the Due Process Clause of the Fourteenth Amendment.**

As to the *Deweese* claim, Defendants assert conclusorily there is no "proper legal and factual basis for the alleged violations." Mot. at 18-20.

The Fourth Claim, however, states that it is based on the substantial similarity between the facts of this case and those in *Deweese*, and that the legal basis is the same as is set forth in that case. Paragraph 53 of the SAC alleges as much:

> 53. *Deweese* struck down as unconstitutional a municipal ordinance requiring males to wear a shirt while jogging, finding the ordinance not rationally related to any legitimate interest : "we are confident that it is not rational for Palm Beach to restrict the clothing choice and personal appearance of its citizens at large." *Id*. at 1370. Under the holding of *Deweese*, *a fortiori* the Defendants' collar mandate would not pass constitutional muster.

Surprisingly, the Motion does not attempt to distinguish the facts of *Deweese* from those alleged here. Nor does the Motion explain why the law applied in *Deweese* would not apply equally here. In fact, the Motion does not even mention

*Deweese*, a jaw-dropping omission, given that the Fourth Claim is expressly based on that decision.

In declaring the municipal ordinance unconstitutional, *Deweese* relied on the Due Process Clause of the 14th Amendment, 812 F.2d at 1367, and thus so do I.[2]

Defendants advance —as their sole argument that the Due Process Clause of the 14th Amendment would not apply here—the holding of *Graham v. Connor*, 490 U.S. 386, (1989), that a court should not revert to a due process analysis "where a particular amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, [because] that amendment, not the more  generalized notion of substantive due process, must be the guide for analyzing Plaintiff's claims." Mot. at 19-20.

However, *Graham* does not help Defendants. It simply applies the interpretive principle that a specific provision of law, *where it exists*, prevails over a general provision. For *Graham* to be relevant, Defendants would have to show that an amendment other than the Due Process Clause of the 14th Amendment provides an explicit textual source of constitutional protection. Defendants, however, do not identify any other amendment as providing the required explicit source. Where, as

---

[2] The plaintiff in *Deweese* had also argued the Fifth and Ninth Amendments provided a basis for relief. Defendants argue persuasively those amendments do not apply here. Mot. at 18-19. Because  the Eleventh Circuit did not base its decision on those amendments, I will delete from ¶52 of the SAC any reference to the Fifth and Ninth Amendments, and will no longer rely on those amendments.

here, there is no identified alternative to the substantive Due Process Clause, *Graham* is thus irrelevant.

This is illustrated in footnote 10 of *Graham*, 490 U.S. at 395 n.10. In *Graham*, plaintiff alleged the police deliberately used excessive force during an investigatory stop. Because an investigatory stop is an event covered by Fourth Amendment "unreasonable seizure" jurisprudence, the Court applied a Fourth Amendment analysis. In that footnote, however, the Court stated "it is clear … that the Due Process Clause" of the 14th Amendment *would* protect individuals as to a claim of excessive force that occurs after arrest ends but before conviction, because the interim between arrest and conviction is not covered by either the Fourth or Eighth Amendments.

Finally, the Motion argues as to Defendant Williams that even if he violated my constitutional rights, he is entitled to qualified immunity. Mot. at 20. The Motion, however, overlooks that the Fourth Claim did not ask for damages,[3] but rather for a declaratory judgement that Defendants' rule is unconstitutional and should not be enforced. ¶55. Qualified immunity is only an immunity from suit for damages; it is not an immunity from suit for declaratory or injunctive relief. *Fortner v. Thomas*, 983 F. 2d 1024, 1028-29 (11th Cir. 1993); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995); *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975).

---

[3] Defendants' statement that the Fourth Claim "alleges damages," Mot. at  3, is mistaken.

**State Law Claims**

The legal theory of the First and Second Claims[4] is straightforward. Those claims accuse the CDD Defendants and Defendant Williams of arbitrarily and capriciously depriving me of my right to use of the Executive Golf Courses, a right provided by explicit written contracts of which I am an intended direct third party beneficiary.

Before addressing the merits, I will first address Defendants' somewhat constrained sovereign immunity argument.

B. **Defendants have forfeited certain immunity arguments.**

The Motion (at 14-15) assumes that the CDD Defendants would have sovereign immunity as to the state law claims in this action.[5] The Motion argues only that their entering into express written contracts to provide me access to the Executive Golf Courses did not waive that immunity. *Id.*

But the SAC described, as to the state law claims, *four* independent bases why sovereign immunity does not apply to the acts described here. ¶¶35-41. The contract waiver issue, paragraph 41, is the only one the Motion disputes.

_____

[4] The Third Claim is discussed separately at 18-20, *infra*.

[5] As to the federal *Deweese* claim, the CDD Defendants do not argue for Eleventh Amendment immunity. Nor could they do so because the CDD Defendants are, at most, equivalent to municipalities, *Morell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978); and because the action only seeks prospective relief. *Summit Medical Assoc. v. Pryor*, 180 F.3d 1326, 1336-37 (11th Cir. 1999).

Defendants do not contest (or even mention) the cases cited in paragraphs 36-37 's explanation of why the CDD Defendants, being no more than municipalities, do not enjoy common law sovereign immunity for the acts alleged; or paragraphs 38-39's explanation why the CDD Defendants have no statutory immunity for claims other than for damages from torts. Further, the Motion ignores paragraph 40's explanation that common law immunity, if there were any, would have been waived by F.S.A. §190.041.

The SAC put Defendants on notice of these positions and thus Defendants had full opportunity to articulate - in the Motion - any arguments for sovereign immunity that would overcome the arguments and authorities in these paragraphs. By leaving out of the Motion any arguments contesting those paragraphs, for purposes of the Motion the CDD Defendants have forfeited the argument they have sovereign immunity.

Defendants' forfeiture is knowing and intentional. Their Motion to Dismiss in the state court had likewise left out any arguments that would rebut the above paragraphs. My Memorandum in Opposition set forth the same argument, as above, of forfeiture. Doc. 1-3, pp. 84-85. Because the state court rules (unlike those in this District) allow for reply briefs as of right, my Memorandum preemptively argued:

> The Reply is too late to introduce new arguments that could have been included in the Motion as filed, and allowing such belated arguments would violate due process, as I would not have had an opportunity to rebut them. *Johnson v. State*, 135 So. 3d 1002, 1029 n.11 (Fla. 2014); *Hoskins v. State*, 75 So. 3d 250, 257 (Fla. 2011); *J.A.B. Enterprises v. Gibbons*, 596 So. 2d 12457, 1250 (Fla. 4th DCA 1992); *Carter v. Bromberg*, 29 So. 3d 208, 209 (Fla. 5th DCA 2020); *Gold Crown Resort Mktg. Inc. v. Phillpotts*, 272 So. 3d 789, 793 n.8 (2019).

Doc. 1-3, p.85. (The forfeiture rule in federal court is similar. *United States v. Levy,* 379 F.3d 1241, 1242-45 (11th Cir. 2004) (collecting cases)). Defendants elected not to file a Reply, thus unquestionably abandoning these arguments. Here, because the Local Rules do not provide for a Reply Brief as of right, the record is likewise closed on this issue.

**C. The contract waiver of immunity applies here.**

Defendants' discussion of sovereign immunity, Mot. at 14-15, was limited to the ground described in paragraph 41, namely, the waiver as to claims based on express written contracts. But that ground is independent from the grounds in paragraphs 36-40 described above, on which Defendants have forfeited argument. Because each of those other, unopposed grounds would allow the state law claims to go forward for the acts alleged here, the Court need not decide the contract waiver issue.

But if the Court reaches the issue, the contract waiver would also apply. Defendants concede that the contract waiver would extend to actions filed by intended third party beneficiaries, where "the parties to the contract clearly express

or the contract itself expresses an intent to primarily and directly benefit … a class of persons to which that [third] party belongs." Mot. at 14.

Here, the SAC alleges "the rights being asserted in this action are based on express written contracts between the CDD Defendants and CDD 6." ¶41. The SAC further alleges "[p]ursuant to the terms of those contracts, …the CDD Defendants [receive] amenity fees … in return for the use of the Executive Golf Courses" by me and other CDD 6 residents. ¶7. Because the purpose of the contracts is to give me (and other residents) access to the Executive Golf Courses, as a resident I am an intended primary and  direct third party beneficiary having standing to to sue, and, as the SAC, ¶41, states, "I am suing to enforce those contractual rights."

Where the "clear intent and purpose of the contract was to directly and substantially benefit" a specific group, the members of the group are third party beneficiaries. *Technicable Video Systems, Inc. v. Americable of Greater Miami, Ltd*., 479 So. 2d 810, 812 (Fla. 3d DCA 1985); *Goodell v. K.T. Enterprises, Ltd*., 394 So. 2d 1087, 1089 (Fla. 1st DCA 1981); *Marianna Lime Products Co. v. McKay*, 147 So. 264, 277-78 (Fla. 1933)("It is the undertaking on the part of the promisor, as a consideration to the promisee, to benefit the third person, that gives rise to a cause of action by the beneficiary against the promisor, resting upon the contract itself").

D. **The First and Second Claims state a cause of action under contract law.**

Although the Motion (at 8) includes a heading arguing the SAC "fails to plead … any cause of action recognized under the law," the text following that heading concedes my right to use the Executive Golf Courses is "based on a contract under which [I pay] amenity fees." *Id*.

The Motion (at 13) acknowledges the contracts between my residential district, CDD 6, and the CDD Defendants. The Motion tacitly concedes the intended purpose of the contracts is to benefit me and other amenity-paying CDD 6 residents by obtaining for us access to the Executive Golf Courses. The Motion fails to explain why I would not be a third party beneficiary, having standing to sue. In any event, on a motion to dismiss, the court will draw all inferences in favor of the pleader.

Lacking a tenable argument on the merits as to the contract theory,  the Motion (at 5-7) instead focuses on the remedy by reciting the legal standards for granting an injunction, and then asking the Court to dismiss the SAC because the injury here may be "doubtful, eventual, or contingent." *Id*. at 7-8. There are several problems with that argument.

As to the facts, Defendants mislead by describing what they call "a supposed directive … to bar individuals, at some unspecified time in the future, from golfing if they do not wear collared shirts." The statement falsely implies that no such policy currently exists.

In a face-to-face meeting with the Executive Director of Golf Services in the Villages two years ago in which I protested the collar mandate, I was told it was being enforced and would continue to be enforced on the Executive Golf Courses. Since then, I have repeatedly been threatened on those courses with expulsion, and in the past two weeks was ejected from an Executive Golf Course because my shirt did not have a collar. There is thus nothing doubtful, eventual, or contingent about the challenged injury.

The Motion also overlooks that the SAC asks for a declaratory judgment. The Motion does not contest that if the Court finds illegality it should issue a declaratory judgment. Although the need for an injunction to end the illegality would then seem obvious, what the terms of the injunction should be can be determined later, based upon the facts proven at trial.

**E. Defendant Williams is not immune from this action.**

The SAC states this "action is not in tort for damages." ¶39. Rather, this is an action in equity for a declaratory judgment and an injunction.

Defendant Williams[6] is accused of directing employees under his control to

_____

[6] The CDD Defendants would have responsibility for his actions under the law of agency. In ¶33 of the SAC, I use the Latin term "doctrine of respondeat superior," which Defendants argue, Mot. at 17, is a theory of vicarious liability in tort. I had thought the term applied to any agency relationship, including contractual. But to dispose of that issue, ¶33 may be amended to substitute "law of agency" for "doctrine of respondeat superior."

13

confront, and to bar or remove from the Executive Golf Courses, male golfers with shirts that do not have collars. ¶16-17. I am personally aggrieved because "I have been told by Williams 's employees that they will continue to bar me from the Executive Golf Courses — even on the hottest afternoons of the year — simply because my shirt does not have a collar." ¶19. In the First Claim, I named Williams as an individual defendant because I believe him to be the individual primarily responsible for the illegal conduct alleged.

Defendants argue that Williams is "immune" from suit under F.S.A. §768.28(9)(a). Mot. at 15-18. But Section 768 - which the Legislature passed in 1974 to grant a limited waiver of sovereign immunity — is limited to tort actions for damages. There is no immunity under that statute in non-tort actions. *Florida Carry,Inc. v. University of Florida*, 180 S. 3d 137, 1459 (Fla. 1st DCA 2015). To repeat, paragraph 39 of the SAC states "this action is not in tort for damages." Williams is thus not immune in this action.

### F. The SAC is not a "shotgun" pleading.

Defendants argue the SAC should be designated a "shotgun" pleading, Mot. at 9-11, an allegation they had not made in state court. I read with interest the only case they cited, *Barmapov v. Amuial,* 986 F.3d 1321 (11th Cir. 2021) , and particularly

14

the concurring opinion of Judge Tjoflat, *id*. at 1326-32.[7]

It seems the term is largely intended to describe complaints that are "calculated to confuse the enemy and the court" in order to "mask" "theories of relief not provided by law," i*d*. at 1324, although some are perhaps simply incompetently drafted. *See id*. at 1327 (J. Tjoflat, concurring). By contrast, if I may say so, the SAC is a model of exemplary complaint drafting.

In drafting the SAC, I began by including, in an introductory section and in the first claim, a series of paragraphs (¶¶2-14, 16-31) reciting the facts that would be common to all four claims. I used four counts (which I labeled Claims) because FRCP 10 recites that to promote clarity: "each claim founded on a separate transaction or occurrence … must be stated in a separate count." The First Claim was directed to Defendant Williams alone and focused on his actions. The Second Claim was directed to the CDD Defendants, alleging their legal responsibility for Williams's actions, and adding several paragraphs focused on sovereign immunity. The Third Claim was directed to a separate basis for liability, the failure of the CDD Defendants to comply with the CDD statute. And the Fourth Claim set forth the *Deweese* claim.

---

[7] If the Court upheld this argument, it should allow a further amendment, rather than dismiss with prejudice. *Vibe Micro*, 986 F.3d at 1295-96. I would make that request.

To avoid unnecessary duplication and to shorten the document, in Claims Two through Four I incorporated earlier paragraphs by reference, taking advantage of the allowance in FRCP 10 that: "a statement in a pleading may be adopted by reference elsewhere in the same pleading."

To support their argument, Defendants assert conclusorily that the SAC contains facts that are "irrelevant."[8]

But when the relevance of each of these facts was attacked in state court by way of a Motion to Strike, Doc. 1-3, pp. 75-76, I responded by describing the potential relevance of each. Doc. 1-3, pp. 89-91, and Defendants elected not to file a Reply Brief. In the current Motion, Defendants failed to inform this Court that the potential relevance of each of those facts has already been explained. Further, Defendants failed to include any arguments that would respond to that explanation.

For example, both the state court motion and this Motion (at 11) attack as "wholly irrelevant" paragraph 20, which describes the weather conditions in the summer, the health dangers those conditions create, and the increased vulnerability of elderly people such as myself to those conditions. Paragraph 20 also recites

---

[8] The assertion might seem premature. Because Defendants have not yet answered the SAC, articulated their defenses, or identified the evidence they will use to support those defenses, what is or is not relevant cannot be reliably determined, as yet.

statistics in support of that position. The issue of the extent to which Defendants

endanger the health of elderly residents is surely "relevant" and certainly relates to

the equities that will be litigated.

The Motion asserts (at 10), without any explanation, that Paragraphs 10-14

are "wholly irrelevant."  But those paragraphs describe and explain the universal

acceptance of the collarless T-shirt as acceptable dress in The Villages. I anticipate

that at trial the Defendants will attempt to defend their actions by arguing that T-

shirts are unacceptable dress. Thus, the paragraphs are relevant to that defense.

The Motion (*id.*) also argues that paragraph 6, which describes the lack of

facilities and the deplorable conditions at the Executive Golf Courses, as

"immaterial." I anticipate that at trial the Defendants will attempt to defend their

actions by arguing that the informality of a T-shirt is somehow incompatible with

the dignity and prestige of those courses. Thus, paragraph 6 is relevant to that

defense.

F. **The Court has jurisdiction over the Third Claim.**

The Motion (at 11-14) argues this Court does not have jurisdiction to review

actions of "administrative agencies."[9] The argument is frivolous because the CDD

---

[9] Although the Motion (at 13-14) asks that the entire SAC be dismissed on the basis of this argument, only the Third Claim mentions the Administrative Procedure Act (F.S.A. Chapter 120) ("APA"). That Act has no relationship to the other claims of the SAC.

Defendants are not administrative agencies.

In state court, Defendants had filed a similarly frivolous motion, arguing I had failed to to exhaust "administrative remedies" against the CDD Defendants. Doc. 1-3, pp. 70-72. To set them straight, my Response, Doc. 1-3, pp. 87-89, stated:

> …F.S.A. §120.52 excludes from the definition of "agency" any "legal entity created solely by a municipality," which is the case with the CDD Defendants here. …The CDD Defendants are not administrative agencies and have not set up any avenues for pursuing "administrative" remedies. The provisions of the APA [the Administrative Procedure Act, Florida Statutes Chapter 120] that provide for judicial review refer only to review of "agency" actions, and the CDD Defendants do not qualify as agencies.

Although Defendants had a right to file a Reply Brief in state court, they elected not to file one. Here, the Local Rules of this District do not provide for Reply Briefs as of right on a Motion to Dismiss. That being the case, one would think that if Defendants had responses to the above argument (or to the other arguments below), they would have included them in their Motion, but they did not. They simply repeated their frivolous argument substantially unchanged, without responding to, or even acknowledging, any of the arguments in state court pointing out the frivolity.

### The Third Claim.

The CDD Defendants were established pursuant to the Uniform Community Development District Act of 1980, F.S.A. §190 (the "CDD Act"). ¶34. Section

190.012(3) of that act grants to CDDs the power "to adopt and enforce appropriate rules following the procedures of chapter 120 [the "APA")], in connection with the provisions of one or more services through its systems or facilities." ¶45. The CDD Act thus "borrows" the "procedures" of the APA, but only as to the adoption and enforcement of rules. The CDD Defendants are not otherwise subject to the APA because F.S.A. §120.52 excludes from the definition of "agency" any "legal entity created solely by a municipality," which is the case with the CDD Defendants here.

The Third Claim alleges the collar mandate "rule" here, because it is "arbitrary"and "capricious," would be an "invalid exercise of delegated legislative authority," as defined in F.S.A. §120.52(8)(e). Further, in adopting the rule the CDD Defendants materially failed to follow the applicable rule-making procedures or requirements that the CDD Act borrowed and thus, under F.S.A. §120.52(8)(a), the "rule" the Defendants adopted is invalid. ¶¶47-48. Because the CDD Act borrowed (and thus incorporated) those provisions, the Third Claim pleads a violation of *the CDD Ac*t by the CDD Defendants.

The CDD Act, however, did not borrow the provisions of the APA that provide for judicial review, which refer only to review of "agency" actions. And because the CDD Defendants are not administrative agencies, they have not set up any avenues for pursuing "administrative" remedies. Nor does the Motion identify

any "administrative remedies " that the CDD Defendants have made available that could be "exhausted."[10]

That leaves the question of what this Court has the power to do about the CDD Defendants' violation of the CDD Act. Section 190.041 of the CDD Act answers that question: "[A]ny aggrieved person may have recourse to such remedies in law and equity as may be necessary to assure compliance with the provisions of this act, including injunctive relief to enjoin or restrain any person violating the provisions of this act."

This Court thus has jurisdiction over Claim 3 under §190.041 and, pursuant to that section, the Third Claim properly asks for a declaratory judgment that the ruIe is invalid and cannot be enforced. ¶50.

**CONCLUSION**

The Court should deny the Motion.

/s/ James J. Foster
James J. Foster
jimfoster@alum.mit.edu
1027 Mallard Lane
The Villages FL 32162
(352)530-0517
September 20, 2024

---

[10] The Motion cites *State Dept. of Health & Rehab. Servs. v. Lewis*, 367 So. 2d 1042, 1045 (Fla. 4th DCA 1979) and *Metro. Dade Cnty. v. Dep't of Com.*, 365 S.2d 432, 434 (Fla. 3d DCA 1978), for the general principle of exhaustion, but those cases involved  actual agencies that had available administrative remedies.

CERTIFICATE OF SERVICE

I certify that I served this document on counsel for Defendants by email on September 20, 2024.

/s/ James J. Foster