UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES J. FOSTER,

    Plaintiff,

v.                                     Case No. 5:24-cv-460

SUMTER LANDING COMMUNITY
DEVELOPMENT DISTRICT,
VILLAGE CENTER COMMUNITY
DEVELOPMENT DISTRICT, AND
DAVID WILLIAMS

    Defendants.
_____/

**DEFENDANT SUMTER LANDING COMMUNITY DEVELOPMENT DISTRICT'S TIME-SENSITIVE MOTION FOR PROTECTIVE ORDER**

COMEs NOW, Defendant, Sumter Landing Community Development District (hereinafter "SLCDD"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 26(c)(1) hereby moves this Honorable Court for the entry of a Protective Order, preventing the deposition of SLCDD's Corporate Representative from occurring on November 21, 2025, and in support states as follows:

1. On November 13, 2025, Plaintiff filed its "Amended Count IV to Second Amended Complaint" alleging Defendants have violated his right to substantive due process of the Fourteenth Amendment to the United States

1

Constitution. *See* Doc. 30.

2. The underlying factual basis of Plaintiff's claim stems from a policy requiring male golfers to wear collared shirts while golfing on courses owned and/or operated by Defendant Village Center Community Development District (hereinafter "VCCDD"). *See* Doc. 30, at ¶¶18-19.

3. On November 6, 2025, Plaintiff sent undersigned counsel, via email, an apparent Notice of Taking Deposition of Defendant Sumter Landing Community Development District's Corporate Representative.[1] *See* **Exhibit A**.

4. The notice identified a deposition was to occur on November 21, 2025 at 10:00am, at 121 N.W. Third Street, Ocala FL 34475. *See id.*

5. Prior to sending this to undersigned counsel, Plaintiff had not contacted undersigned counsel to inquire whether he or his client were available on November 21, 2025, before unilaterally scheduling the deposition.

6. On November 7, 2025, undersigned counsel wrote to Plaintiff, via email, and explained that he was unavailable on November 21, 2025; and further informed Plaintiff that he needed to speak with his client-representative to determine who would be the appropriate individual to sit for the requested deposition, based on the area of inquiry contained within Exhibit A of the

---

[1] Albeit that the Notice did not possess a Title, nor refer to Fed. R. Civ. P. 30(b)(6).

Notice.

7. In an exchange of several emails between undersigned counsel and Plaintiff between November 7, 2025 and November 14, 2025, Plaintiff stated that he would only agree to withdraw his Notice, and rescheduled the requested deposition, if undersigned counsel were to provide an alternative date for the deposition to occur, of which date would need to occur within approximately one month of the unilaterally scheduled date.

8. Undersigned counsel informed Plaintiff that he could not comply with Plaintiff's request as the holidays are approaching resulting in less than 23 working days remaining in 2025 (excluding holidays); and that undersigned is committed to other work events (depositions, mediations, hearings, etc.) for each remaining business day of 2025. And that said events had been scheduled for weeks and months in advance; and prior to Plaintiff's request.

9. Undersigned counsel requested to schedule the requested deposition on a date occurring in early 2026.

10. In response, Plaintiff accused undersigned counsel of performing a delay tactic, and threatened sanctions against undersigned counsel.

11. As such, undersigned counsel believes it is necessary to file this Motion for Protective Order with the Court due to the looming threat of sanctions by Plaintiff, and due to undersigned counsel's inability to attend the deposition

Plaintiff unilaterally scheduled.

12. This reality is increasing unfortunate due to the fact that recently when Plaintiff reached out to undersigned counsel and requested an agreed extension of Court deadlines, based on treatment Plaintiff was undergoing for health concerns, not only did undersigned counsel not hesitate to agree to Plaintiff's extension request (and draft the Joint Motion), but undersigned counsel also suggested that he would be in agreement to an even longer extension of time than that requested by Plaintiff. However, Plaintiff fails to extend the same courtesy to undersigned counsel.

## MEMORANDUM OF LAW

13. Fed. R. Civ. P. 26(c)(1), in part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . .The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> . . .
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

14. Furthermore, on September 3, 2024, this Honorable Court filed its "Order For Pro Se Litigants." *See* Doc. 5.

15. Paragraph 1 of the Order, provides in part, "As an initial matter, you should know that the rules apply to all parties regardless of whether they have a lawyer. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)." *Id*. At ¶1.

16. Additionally, paragraph 1 refers the Plaintiff to additional resources that the Plaintiff should review and familiarize himself with, including specifically, the Middle District of Florida's Discovery Handbook, which contains a general discussion of the District's discovery practices. *Id*.

17. Section I.A.3. of the Middle District of Florida's Discovery Handbook provides that, "An attorney shall reasonably attempt to accommodate the schedules of opposing counsel, parties, and witnesses in scheduling discovery." *Middle District Discovery: A Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida*, February 1, 2021, at 2https://www.flmd.uscourts.gov/sites/flmd/files/documents/flmd-middle-district-discovery-a-handbook-on-civil-discovery-practice.pdf.

18. Section II. A. 1. Provides, in part, "An attorney is expected to accommodate the schedules of opposing counsel. In doing so, the attorney should normally pre-arrange a deposition with opposing counsel before serving the notice." *Id*., at 6.

19. Plaintiff has failed to comply with Sections I.A.3. and II.A.1 of the Middle District of Florida's Discovery Handbook by failing to attempt to coordinate the requested deposition on a mutually agreeable date before unilaterally scheduling it, and by also, thereafter, failing to move the date to a mutually

5

agreeable date; thereby failing to accommodate undesigned counsel's schedule.

20. Lastly, Fed. R. Civ. P. 30(b)(6) provides, in part, "Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination."

21. Despite Plaintiff insisting that the unilaterally scheduled deposition proceed on November 21, 2025, Plaintiff has failed to comply with the pre-requisite of Fed. R. Civ. P. 30(b)(6) requiring a good faith conferral on the matters sought for examination.

22. If Plaintiff had attempted the conferral, he would have been made aware that he has noticed the least appropriate Defendant to submit to questions on the areas of inquiry indicated in Exhibit 1 to his Notice.

23. Of the three Defendants named in this action, SLCDD is the least appropriate to answer questions based on many of the areas contained within Exhibit A of the Notice, including more specifically, ownership and management of 46 golf courses; identity of employers and staff of the golf courses; the history and policies of the golf courses dress code, and other matters pertaining to the operation of golf courses, as SLCDD does not own or operate the subject golf courses.

24. Therefore, Plaintiff's insistence that the deposition of SLCDD's Corporate

Representative to occur on the unavailable date, based on areas of inquiry not suitable for that entity is a fruitless effort, which has now required the judicial resources of this Court to resolve.

WHEREFORE, Defendant Sumter Landing Community Development District, respectfully requests this Honorable Court enter a Protective Order, ordering the following: 1) That Defendant SLCDD and undersigned counsel are not required to attend the unilaterally scheduled deposition on November 25, 2025; 2) That Plaintiff must participate in conferral with undersigned counsel, to discuss the matters for examination pursuant to Fed. R. Civ. P. 30(b)(6) before scheduling any depositions of Corporate Representatives of the Defendant entities; and 3) Order that the parties mutually coordinate any depositions of Corporate Representatives of the Defendant entities to occur on dates no sooner than January 5, 2026, but no later than February 13, 2026.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel and Plaintiff, James Foster, have conferred in good faith as follows: On November 18, 2025, undersigned counsel sent an email containing this Motion for Protective Order to Plaintiff, and inquiring, based on their previous communications, whether Plaintiff would confirm that he was not in agreement with the requested relief

contained in this motion. On this same date, Plaintiff called undersigned's office and left a voicemail message confirming that he would not agree to reschedule the requested deposition on a date occurring beyond calendar year 2025. As such, Plaintiff opposes the Defendant's requested relief.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this this 18th day of November, 2025, a true copy is served via U.S. Mail and e-mail to: James J. Foster, *Pro se*, 1027 Mallard Lane, The Villages, FL 32162 at: jimfoster@alum.mit.edu .

> */s/ Jon Christian Prusinowski*
> Jon Christian Prusinowski, Esquire
> Florida Bar No.: 1025082
> Roper, Townsend & Sutphen, P.A.
> 255 S. Orange Avenue, Suite 750
> Orlando, FL  32801
> Telephone: (407) 897-5150
> Facsimile: (407) 897-3332
> Primary e-mail:
> cprusinowski@roperpa.com
> Secondary e-mail:
> jmaffey@roperpa.com
> Attorney for Defendant, Sumter Landing Community Development District, Village Center Community Development District, and David Williams

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

JAMES J. FOSTER, Plaintiff, v. SUMTER LANDING COMMUNITY DEVELOPMENT DISTRICT, VILLAGE CENTER COMMUNITY DEVELOPMENT DISTRICT, and DAVID WILLIAMS,

_____ Case No. 5:24-cv-460-TJC-PRL

PLEASE TAKE NOTICE that I will take the deposition by oral questions of Sumter Landing Community Development District ("SLCDD") by one or more officers, directors, or managing agents, or designated other persons who consent to testify on its behalf on the the matters described in Exhibit A. The persons designated must testify about information known or reasonably available to SLCDD, and should be prepared accordingly.

The deposition will be taken at 10 AM on November 21, 2025 at Wen & Associates, 121 N.W. Third Street, Ocala FL 34475, unless counsel, before that date, agree on a different date or location. The deposition will be recorded by audio means.

/s/ James J. Foster
Florida Bar No. 1062462
jimfoster@alum.mit.edu
1027 Mallard Lane
The Villages FL 32162
(352) 530-0517

November 6, 2025

**EXHIBIT 1**

EXHIBIT A

1. Ownership of each of the 46 Executive Golf Courses (EGC) in The Villages.

2. Management of each of the 46 EGCs in The Villages.

3. Date on which ownership of each EGC was acquired and by which entity.

4. Date on which management of each EGC was assumed and by which entity.

5. Identity of the Employer of the staff at each of the EGCs.

6. Whether Plaintiff's homesite at 1027 Mallard Lane is a Transferred Amenity Fees Residence under contracts to which any Defendant is a party.

7. Assignment to Defendants of right to receive Contractual Amenities Fees.

8. Receipt by Defendants of Contractual Amenities Fees for Plaintiff's homesite at 1027 Mallard Lane.

9. Identity of recreational amenities to which Plaintiff's payment of Contractual Amenities Fees provides access.

10. Whether men wearing collarless T-shirts are welcomed as customers in stores, restaurants, and other commercial establishments in The Villages and surrounding communities.

11. Whether men wearing collarless T-shirts are welcomed as customers in golf pro shops in The Villages golf country clubs and all restaurants attached to those country clubs.

12. Whether men wearing collarless T-shirts are welcomed in the governmental offices and facilities in The Villages and surrounding communities.

13. The portion of the male population of The Villages that wears a collarless T-shirt when venturing outdoors when temperatures reach the 80s and 90s.

14. Whether a collarless T-shirt is considered appropriate attire for outdoor activities in The Villages.

15. The history of policies at the EGCs as regards mandating that shirts must have a collar.

16. Procedures followed in adopting the collar mandate.

17. Instructions given to staff of the EGCs as regards male golfers wearing collarless T-shirts.

18. Health risks caused by elevated temperatures on the EGCs.

19. Effects, if any, of the collar mandate on the operation of the EGCs.

20. Effects, if any, on the operation of the EGCs of Plaintiff's shirt not having a collar.

21. Whether barring Plaintiff from the EGCs benefits the public health.

22. Whether barring Plaintiff from the EGCs benefits public safety.

23. Whether barring Plaintiff from the EGCs benefits public welfare.

24. Whether Plaintiff's shirt not having a collar affects the well being of others on the EGCs.

25. Governmental purposes served by the collar mandate.

26. Support for the statement that the collar mandate protects "player health and safety."

27. Support for the statement that the collar mandate is needed to maintain "community standards."

28. Support for the statement that new residents might not buy homes in The Villages if there is no collar mandate at the EGCs.