UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES J. FOSTER,
Plaintiff,

v.                                                          Case No. 5:24-cv-460-TJC-PRL

SUMTER LANDING COMMUNITY DEVELOPMENT DISTRICT, VILLAGE CENTER COMMUNITY DEVELOPMENT DISTRICT, and DAVID WILLIAMS,
Defendants.

_____

# OPPOSITION OF PLAINTIFF TO DEFENDANTS' [SECOND] MOTION TO DISMISS

**Introduction.**

On December 5, 2025, Defendants filed a second Motion to Dismiss, Doc. 34, ("Second Motion") directed to the Amended Count IV, Doc. 30. This Opposition responds to the Second Motion.

I refer to Defendants' pending Motion as a "Second" Motion because Defendants had previously filed a largely identical motion ("First Motion"), Doc. 9, which the Court denied on August 29. Doc. 25.

The Second Motion substantially tracks the First. Considering that the Court denied the First Motion, one might expect Defendants would have filed the Second Motion only after requesting permission to do so, explaining why a

1

Second Motion would be necessary or permissible. However, they filed the Second Motion without requesting leave.

Besides denying the First Motion, the Court had ordered Defendants to answer the Amended Count IV by December 5. Doc. 29 at 1. Defendants have not complied with that Order, and are thus in default.

I. **The Court should deny (or strike) the Second Motion because it violated the consolidation rule.**

On December 10, I filed a Motion to Strike Defendants' Unauthorized Second Motion to Dismiss, because the Second Motion violated the consolidation rule in Rule 12. Doc. 36. The Motion to Strike cited the pertinent provisions of Rule 12; and listed authorities, including several in this district and circuit, that would mandate striking the Second Motion. I will not repeat those citations here, but if the Court does not grant the Motion to Strike, those same authorities would support denying the Second Motion.

Local Rule 3.01(d) required that Defendants file a response to the Motion to Strike by December 24. Defendants missed that date, and, as of this filing on December 26, have not filed a response. Local Rule 3.01(d) further provides "If a party fails to timely respond, the motion is subject to treatment as unopposed."

**II. The Court should deny the Second Motion based on the denial of the First Motion.**

The Order of August 29, 2025, stated: "[A]fter considering DeWeese v. Town of Palm Beach, 812 F.2d 1365 (11th Cir. 1987). and subsequent cases citing it, Plaintiff's Fourteenth Amendment claim alleged in Count IV, though inartfully pleaded, survives the motion to dismiss." Doc. 25 at 1-2. The Court did not otherwise explain the reasons for denying the First Motion. Thus the Order gave Defendants no basis to ask for re-argument, and Defendants did not ask for re-argument.

The Amended Count IV is substantively identical to the Count IV before the amendment, which the Court upheld in its Order deciding the First Motion. The legal theory is the same; the arguments in support of that theory are the same; and the facts have not changed. Thus, all the arguments Defendants raise in the Second Motion were made —or could have been made —in the First Motion. The Second Motion does not claim otherwise.

Because the denial of the First Motion was without prejudice, Defendants can re-raise the issues from that Motion, if at an appropriate time. In a footnote, the Court telegraphed when that should be: "The Court anticipates that after appropriate discovery, Defendants will test the bona fides of the DeWeese claim

3

via motion for summary judgment." Doc. 25 at 2 n.1. But the Court should not allow Defendants to re-raise any of those issues until, at minimum, after they file an answer to Amended Count IV.

### III. The Court Should Deny the Second Motion on the Merits.

Defendants raised a number of arguments in the First Motion, in response to which I filed an opposition refuting those arguments. Doc. 12 ("Opp'n"). The Court then ordered Defendants to submit a Reply limited to certain issues, Doc. 19, and allowed me to file a Sur-Reply. Doc. 24.

Several of Defendants' arguments in the Second Motion are essentially unchanged from the First Motion. For those arguments, the responses in my earlier Opposition (and Sur-Reply) continue to apply, as I will point out. Oddly, the Second Motion repeats arguments from the First Motion without responding to, or even mentioning, the positions I took in the Opposition and Sur-Reply.

For example, the beginning section of the Second Motion, pages 4-5, titled "Motion to Dismiss Standard," was copied verbatim from pages 4-5 of the First Motion. It simply recites boilerplate statements acknowledging the Court must accept as true, for purposes of the motion, all facts pleaded in the complaint, but

not legal conclusions. In neither motion does the section discuss the specific facts of this case, and thus this section can be skipped over.

The next section, 2d Mot. 5-8, is not directed to liability, but rather to the injunctive remedy sought. The first page and a half, *id*. 5-7, was copied verbatim from pages 5-7 of the First Motion. My argument in opposition here thus largely tracks my response to the corresponding part of the First Motion.

Defendants argue that even if the collar mandate is illegal, I will not be "harmed" by its enforcement because I can access their courses if I comply with the mandate. 2d. Mot. 7. The argument, however, is contradicted by the facts in paragraphs 23-25 of Amended Count IV, which detail that I am harmed by enforcement of the mandate during the hottest months of the Florida year because it creates health dangers for me and other elderly residents of The Villages. The argument also ignores the holding in *DeWeese v. Town of Palm Beach* that "a liberty interest in personal dress is protected" by the Fourteenth Amendment. 812 F.2d 1365, 1367 (11th Cir. 1987). I, like DeWeese, have been have been deprived of that liberty.

Amended Count IV does not seek monetary damages. Am. Cnt. IV ¶ 1. The Second Motion acknowledges that paragraph 31 pleads that monetary

damages are neither measurable nor available, but argues those facts are "conclusory." 2d Mot. 8. But, given the harms outlined above, Defendants would need to explain how that measurement would be performed and how the award would make me whole. They did neither. The case Defendants cite, *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1257 (S.D. Fla. 2017), did not discuss either of these issues because the plaintiffs there, who had resigned from the defendant club, were expressly seeking only monetary damages, in the form of a return of their membership deposits.

Finally, the Second Motion overlooks that the Amended Count IV also asks for a declaratory judgment.

**A. The Amended Count IV is not a "shotgun pleading."**

The First Motion, at 11-14, had argued that the Second Amended Complaint ("SAC") was a "shotgun pleading," a term the 11th Circuit used in *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (2021), to describe the overly confusing complaint in that action. The basis for the argument by Defendants in the First Motion was that the SAC contained certain facts that Defendants claimed were irrelevant. My response to that argument: 1) explained the relevance of those facts; 2) pointed out that the relevance had previously been

explained in state court filings, Doc. 1-3 at 89-91; and 3) pointed out the motion did not disclose or respond to that earlier explanation. Opp'n 14-17. The Court did not buy Defendants' "shotgun pleading" argument, as it denied the First Motion.

The Second Motion, at 11-13, also asserts a "shotgun pleading" argument against Amended Count IV, but drops the allegations as to relevance. Defendants now argue, somewhat confusingly, that the Count "assert[s] multiple claims against multiple defendants without specifying which of the defendants the claim is brought against." *Id*. at 13.

The argument confuses because there are no multiple claims in the Amended Count IV. Rather, per the Court's August 29 Order, Doc. 25, the Amended Count IV is limited to the "Fourteenth Amendment claim." And the Amended Count IV repeatedly specifies that the claim is brought against all three Defendants. Am. Cnt. IV ¶¶ 19-20, 22, 27-28, 39.

**B. The qualified immunity affirmative defense does not apply to a suit for declaratory and injunctive relief.**

The First Motion had argued Defendant Williams was entitled to qualified immunity.[1] 1st Mot. 20. But my response pointed out qualified immunity is only

---

[1] This affirmative defense is asserted only by Williams.

7

an immunity from suit for damages, not an immunity from suit for declaratory or injunctive relief:

> The Motion … overlooks that the Fourth Claim did not ask for damages, but rather for a declaratory judgement that Defendants' rule is unconstitutional and should not be enforced. ¶55. *Qualified immunity is only an immunity from suit for damages; it is not an immunity from suit for declaratory or injunctive relief. Fortner v. Thomas*, 983 F.3d 1024, 1028-29 (11th Cir. 1993); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995); *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975).

Opp'n at 7 (emphasis added).

When the Court denied the First Motion, it necessarily rejected the qualified immunity defense, presumably for this reason.

The Second Motion asserts the same qualified immunity defense, albeit at more length. 2d Mot. 13-17. But the motion does not mention - or attempt to rebut — the response given to the earlier motion: qualified immunity does not apply to suits for declaratory or injunctive relief. Nor does the Second Motion distinguish, or even mention, *Fortner, D'Aguanno,* and *Wood*, the authorities cited above against Defendants' earlier assertion of this defense.

Defendants were thus on notice of the defect in this affirmative defense. If they had any argument or authorities responsive to the above, those should have been set forth in the Second Motion. By not including those arguments or

authorities in the Second Motion, they have forfeited using them. *United States v. Campbell*, 26 F. 4th 860, 871-72 (11th Cir. 2022).

## C. The Court should not dismiss the substantive due process claim against Williams.

The Second Motion, at 9-11, argues that the claim against Williams[2] for violating Fourteenth Amendment substantive due process should be dismissed as a matter of law because his are executive actions subject to a "shocks the conscience" test, citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), as construed by *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1242 (11th Cir. 2025).[3]

This argument did not appear in the First Motion. Williams does not base the argument on any change introduced in the amendment to the Count, or otherwise explain why the argument could not have been made in the earlier motion. The argument thus should be considered forfeited. *Campbell,* 26 F.4th at 860, 871-72.

Here, the Amended Count IV does not seek damages. Am. Cnt. ¶ 1.

---

[2] The Second Motion limits this argument to Williams. The CDD Defendants have not asserted that a "shocks the conscience" test would apply to them.

[3] A petition for certiorari in *Littlejohn* has been scheduled for consideration at the Supreme Court's January 9, 2026 conference.

Even if a "shocks the conscience" test could be applied to a complaint against Williams for damages, it would not apply to a claim limited to declaratory or injunctive relief. *Wood*, 420 U.S. at 314 n.6 ("immunity from damages does not bar equitable relief as well"); *D'Aguanno*, 50 F.3d at 879; *Fortner*, 983 F.3d at 1028-29.

In *Lewis*, the action was exclusively for damages, alleging a police officer acted with extreme recklessness in pursuing at high speed a car that did not stop when signaled to do so, the chase resulting in a crash that killed bystanders. The Court recognized that accused conduct fell on the spectrum between intentional harm and simple negligence, and held that "shocks the conscience" would be the appropriate test for conduct on that spectrum.

In *Littlejohn*, the plaintiffs had originally sought both damages and equitable relief. But after the Legislature passed a statute that effectively granted that equitable relief, the district court dismissed the equitable claims as moot, and the plaintiffs did not appeal from that decision. 132 F. 4th at 1237. The opinion thus involved only a damages claim.

There is no need to expand the "shock the conscience" test to actions where the only relief sought is a declaratory judgment and a prohibitory injunction. The decision here to continue the challenged policy into the future is

deliberate in nature and not issued in exigent circumstances such as the police chase in *Lewis*.

Permitting arbitrary government conduct to continue unchecked unless the conduct is deemed "conscience shocking" is inconsistent with the historically stated principles of substantive due process protection.

The U.S. Supreme Court said that "[h]istorically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331(1986) (emphasis added). It has repeatedly held that the Due Process Clause "was intended to *secure individuals from the arbitrary exercise of the powers of government.*" *Id*. (emphasis added). Indeed, in *Lewis*, the Court stressed the intent of the Due Process Clause when determining to apply the "shocks the conscience" test in the police-chase context, stating that "[s]ince the time of our early explanations of due process, we have understood *the core of the concept to be protection against arbitrary action*." Lewis, 523 U.S. at 845.

The purpose of the substantive due process doctrine is to prevent arbitrary and capricious intentional conduct. *Id*. Where the actions of a person do not meet

11

that standard and are continuing, the court should be free to order an end to the practice.

The Supreme Court has specified injunctive suits under §1983 as the vehicle to put an end to these practices, and has not imposed a shock the conscience standard outside a damages context.. *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 700 (1978) ("[M]unicipalities cannot simply 'arrange their affairs' on an assumption that they can violate constitutional rights indefinitely, since injunctive suits against local officials under §1983 would prohibit any such arrangement."); *Eastern Enterprises v. Apfel*, 524 U.S. 498, 547 (1998) (Kennedy, J., concurring) (action for declaratory judgment and injunction) (test for substantive due process is whether legislature acted in an arbitrary and irrational way); *Lingle v. Chevron USA Inc.*, 544 U.S. 528 (2004) ("a regulation that fails to serve any legitimate governmental objective may be so arbitrary and irrational that it runs afoul of the Due Process Clause"); test is whether legislation substantially advances legitimate government goals); *Winston* v. *City of Syracuse*, 887 F.3d 553, 566 n.11 (2d Cir. 2018)(substantive due process claim of plaintiff seeking injunction or declaratory relief is subject to rational basis review).

**Conclusion.**

The Court should deny the Second Motion.


/s/ James J. Foster

Florida Bar No. 1062462

jimfoster@alum.mit.edu

1027 Mallard Lane
The Villages FL 32162

(352) 530-0517

December 26, 2025

.