UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES J. FOSTER,

     Plaintiff,

v.                              Case No. 5:24-cv-460

SUMTER LANDING COMMUNITY     **DISPOSITIVE MOTION**
DEVELOPMENT DISTRICT,
VILLAGE CENTER COMMUNITY
DEVELOPMENT DISTRICT, AND
DAVID WILLIAMS,

     Defendants.

_____/

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

COME NOW, Defendants, Sumter Landing Community Development District (hereinafter "SLCDD"), Village Center Community Development District (hereinafter "VCCDD"), and David Williams, by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby files and serves their Motion for Final Summary Judgment and, in support thereof, states as follows:

### I    INTRODUCTION AND BACKGROUND

This case has had several versions of Complaints being filed[1] (beginning in Florida State Court before being removed to this jurisdiction), culminating with

---

[1] A recent history of the filings can be found within Defendants' Motion to Dismiss Plaintiff's Amended Count IV to Second Amended Complaint and Memorandum of Law. (Doc. 34).

the Plaintiff, James J. Foster, (hereinafter referred to as "Plaintiff") filing Amended Count IV to the Second Amended Complaint. (Doc. 30). The crux of the Plaintiff's factual basis against the Defendants is that Village Center Community Development District and Sumter Landing Community Development District (hereinafter "the CDD Defendants") are public entities which own golf courses, and have a policy which requires male golfers to wear collared shirts while golfing on their golf courses. *See* (Doc. 30). Plaintiff contends that the collared shirt portion of the dress code is unconstitutional as it violates his liberty interest in his personal dress. *See* (Doc. 30). Plaintiff alleges that David Williams is unlawfully enforcing the CDD Defendants' policy, and Plaintiff is suing Mr. Williams in both his official and individual capacity.[2] *See* (Doc. 30). The Plaintiff requests injunctive and declaratory relief. *See* (Doc. 30).

## II.    STATEMENT OF UNDISPUTED FACT

1. The applicable portion of the men's dress code policy that the Plaintiff challenges is as follows:

   The following dress code is for all Championship, Executive, and Pitch & Putt Golf Courses, and The Villages Golf Academy, driving ranges, warm-up nets and putting greens.

---

[2] Plaintiff's lawsuit against Defendant Williams must be limited to his capacity as a governmental actor. Otherwise, Williams would not be liable to Plaintiff because merely private conduct, however wrongful or discriminatory, is not actionable under §1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'")

. . .

> Shirts shall have a collar and sleeves. Turtlenecks, mock turtlenecks and blade collars are acceptable (minimum 1 ¼" collars). No t-shirts.

2. In answering Plaintiff's Interrogatory No. 7, Defendants Village Center Community Development District and Sumter Landing Community Development District described the purpose of the dress code as follows:

> [T]he sport of golf has a strong emphasis on etiquette; proper golf attire is a standard requirement of player conduct reflecting the sport's traditional values. Most golf courses are outdoors, often in warm or temperate climates. Polo shirts are designed to keep players cool and comfortable. The breathable fabrics wick away moisture, while the open collar allows for better air circulation around the neck. Modern golf attire incorporates advanced materials that enhance ventilation and keep the wearer dry, essential for maintaining focus and performance on the course. Protection of player health and safety have been determined, among other reasons, to justify the requirement of proper golf attire.

> The Villages lifestyle offers world class golf courses and facilities. Incorporating traditional golf etiquette and attire upholds the quality-of-life standards that are unique to The Villages lifestyle. New residents buy homes because of this lifestyle and maintaining community standards has been the foundation of continued community satisfaction and new home sales. Golf attire is one component of the overall look and feel of the community infrastructure that the Defendant was created to finance, operate, and maintain. The Defendant is obligated to maintain and operate the amenities including the golf courses so that they provide recreational services and activities of approximately the same quality, frequency, character and duration over time. The standards to which the Defendant maintains the amenities, which include the dress code at the golf course, support the overall look and feel of the community and the desirability of The Villages as a community in which to reside or own real estate.

3. Plaintiff James J. Foster, testified during his deposition that he has been removed, once, from the Defendants' golf courses due to non-compliance with their dress code, specifically for failing to wear a shirt with a collar. *See Deposition Transcript of James J. Foster*, at 82: 13-16, February 19, 2026.

4. Despite being removed only once, Plaintiff testified that he will show up to the Defendants' golf courses wearing a collared shirt over his t-shirt, then take his collared shirt off and continue to play golf; and will only put the collared shirt back on when instructed to do so by a golf ambassador. *See id.*, at 84: 6-21.

5. After the one time he was prevented from playing golf at the courses owned by the CDD Defendants, Plaintiff never again attempted to enter the golf course to play golf without adhering to the dress code. *See id.*, at 84-85: 22-25, 1-2.

6. Plaintiff has played golf at Defendants' golf courses on approximately thirteen (13) occasions in 2026 (prior to his deposition on February 19, 2026); including having played golf at one of the Defendants' golf courses just the day before his deposition. *See discussion id.*, at 148, 149, 150: 12-25, 13-25, 1-21. *See also id.*, at 19-20: 22-25; 1-6.

7.  Plaintiff has played golf at Defendants' golf courses on approximately five-hundred (500) occasions over the last seven (7) years. *See discussion id.*, at 148, 149, 150: 12-25, 13-25, 1-21.

8.  Plaintiff is an attorney and a member of the Florida Bar. *See id.*, at 7: 10-11; 23: 9-12.

9.  During his deposition, Plaintiff avoided taking a position that the Defendants cannot place any regulation on dress whatsoever. *See id.*, 22: 5-11.

10. In fact, Plaintiff concedes that there "are certainly circumstances under which governments regulate the dress [of persons that enter their facilities]." *See id.*, at 33-34: 22-25, 1-7.

11. Plaintiff avoids taking any position as to whether or not the Defendants are lawfully permitted to require patrons of their golf courses to wear shoes (as is part of their dress code). *See id.*, at 21-22: 24-25, 1-4.

12. When Plaintiff was asked, based on his knowledge of the legal issues in this case as an attorney, whether his challenge to the Defendants' "collar mandate" could also be used to challenge the portion of the golf dress code that required golfers to wear shoes, Plaintiff refused to answer the question but encouraged undersigned counsel to make the argument to the Court,

specifically stating: "run that up the flag pole, see if the judge salutes it." *Id.*, at 26: 13:25.

13. Plaintiff acknowledges that Defendants' golf courses are not open to public. *See id.* at 44: 15-19 (A: "Someone just driving from Georgia does not have the right to the use the course because he or she has not paid the amenity fees and is not part of the group that has obtained those rights.") *See also id.*, at 105: 16-18 (A: "My understand[ing] is that access to the golf course is limited to residents of the Villages and their guests.")

14. Plaintiff testified that "not just anybody can go to the [Defendants'] golf courses and play." *Id.*, at 38: 6-8.

15. He continued, "The right for people to go, is based upon the paying of amenity fees." *Id.*, at 38: 6-9.

16. Plaintiff seemed to acknowledge that his amenity fees that are paid and permit him to play golf at the Defendants golf courses, do not entitle him to an unconditional right to play golf without any regulations. *See id.*, at 39: 11-20 (A: "It does not mean that I can bring a machine gun with me and shoot other people. If I'm gonna do that, I would think that I could be barred from the course."); *See further id.*, at 40: 4-13 (Plaintiff agreeing Defendants can place "some restrictions" on the use of their golf courses).

17. Within Plaintiff's Complaint, he references (without identifying a source of the information) heat-related statistics and illnesses which render the Defendants' dress code "clearly unreasonable." (Doc. 30. at ¶23).

18. During his deposition, Plaintiff was unable to identity the internet sources from which he obtained his statistics, but admits he is unable to verify that the materials cited examined heat-related events that specifically occurred at golf courses, nor can he say whether heat-incidents references could have been avoided in the absence of a collared shirt. *See Tr.*, at 89: 9-24, February 19, 2026.

19. Of the "research" he reviewed and relies on in his Complaint and Interrogatory Answers, Plaintiff does not recall "collared shirts being mentioned at all." *See id.*, at 139: 15-18; 172: 2-10.

### III.    STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(a), The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." W*arren v. Delvista Towers Condo. Ass'n*, 49 F. Supp. 3d 1082, 1085

(S.D. Fla. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)) (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.* (quoting *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). It is "material" if it might affect the outcome of the case under the governing law. *Id.* (quoting *Anderson*, 477 U.S. at 248). In addition, when considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* (quoting *Anderson*, 477 U.S. at 255).

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See U.S. v. Four Parcels of Real Prop, in Greene & Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels*, 941 F.2d at 1438

(quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).

### IV.   MEMORANDUM OF LAW

**1. Plaintiff failed to plead a cause of action for a violation of 42 U.S.C. §1983, specifically a violation of substantive due process, by Defendant David Williams, as Plaintiff misapplies the correct legal principles. And Defendant Williams' conduct does not "shock the conscience." Therefore, Defendant David Williams is entitled to Summary Judgment as a matter of law.**

The United States Supreme Court in *County of Sacramento v. Lewis* explained, "While due process protection in the substantive sense limits what the government may do in both its legislative, and its executive capacities, criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Executive acts characteristically apply to a limited number of persons and typically arise from the ministerial or administrative activities of members of the executive branch." *Lee v. City of Gulfport*, No. 8:23-cv-2996-VMC-AEP, 2025 U.S. Dist. LEXIS 223006, at *22-23 (M.D. Fla. Nov. 13, 2025) (citing *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1242 (11th Cir. 2025)). "Legislative acts, on the other hand, generally apply to a larger segment of — if not all of — society; laws and broad-ranging executive regulations are the most common examples." *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1242 (11th Cir. 2025)).  If legislative action involves a right that is not fundamental, the Court's subject that action to rational-

basis review. *Id.*, at 1239 (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). However, the test for whether the substantive component of the Due Process Clause is violated by executive action is whether it shocks the conscience. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, (1998).

The *DeWesse* case, relied on by Plaintiff is an example of a legislative act. In *DeWesse* the Eleventh Circuit struck down as unconstitutional a municipal ordinance requiring makes to wear a shirt while jobbing. *See DeWesse v. Town of Palm Beach*, 812 F. 2d 1365 (11th Cir. 1987); *See also* Doc. 30, at ¶35. Amended County IV concedes that the Plaintiff is challenging a policy of the CDD Defendants that applies to "citizens at large," therefore, the rational basis test is applied to the legislative action of the CDD Defendants. "A legislative act involves policy-making rather than mere administrative application of existing policies." *Littlejohn* 132 F.4th at 1242 (citing *Crymes v. DeKalb County*, 923 F.2d 1482, 1485 (11th Cir. 1991)).

However, the conduct alleged against Defendant Davids Williams is that of an administrative act which involves the mere application of existing polices to a specific group of people (people attempting to play golf) as opposed to citizens at large as in in *DeWesse* (ordinance that prohibited specific dress in public areas). In fact, Plaintiff conceded during his deposition that the Defendants' golf courses are not open to members of the public in general. *See Tr.*, at 44: 15-19; *See also Tr..*, at

105: 16-18 (A: "My understand[ing] is that access to the golf course is limited to residents of the Villages and their guests.").

Amended Count IV alleges that Defendant David Williams "has illegally directed those employees under his control to confront, and to bar or remove from the Executive Golf Course." Doc. 30, at ¶19. Plaintiff continues to state that "Williams is illegally denying me access to the Executive Golf Courses. . ." *Id.*, at ¶19. Plaintiff is suing Mr. Williams both in his personal and in his official capacity. *Id.*, at ¶5. However, Plaintiff is suing SLCDD and VCCDD based on their "official policy or custom." *Id.*, at ¶22. Plaintiff is alleging that *all* Defendants violated the Plaintiff's substantive due process rights under the Fourteenth Amendment to the United States Constitution; and Plaintiff relies solely of *DeWesse* in support. *See* Doc. 30, at ¶34. However, whether each Defendant's conduct is categorized as a "legislative" or "executive" action guides this Court's application of legal principles pursuant to Fourteenth Amendment substantive due process legal doctrine. As such, the test for whether David Williams actions violated Plaintiff's substantive due process rights is whether or not his conduct shocked the conscience. Therefore, Plaintiff misapplied the incorrect analysis to his allegations against Mr. Williams, and failed to state a cause of action against David Williams for a violation of substantive due process under the Fourteenth Amendment as Plaintiff failed to allege David William's conduct "shocked the conscience." As

such, Defendant David Williams is entitled to summary judgment as a matter of law.

Furthermore, Mr. Williams' conduct, of enforcing a policy that requires male golfers wear collared or mock collar shirts on a golf course could not be identified as a policy that "shocks the conscience" when it is the commonplace expectation for a golf course to have such a dress code. The collared shirt is a staple of golf attire and tradition; and similar dress policies are enforced by countless golf courses both locally and across the country.[3] For instance, Viera East CDD, which is also a governmental entity, has a similar dress code for male golfers. *See* Viera East CDD, Policies & Procedures, VIERAEASTCDD.COM, Page 3, https://vieraeastcdd.com/wp-content/uploads/2024/08/policies-procedures_-attachment-a_fy25-edited.pdf (last visited March 31, 2026) (requiring collared shirts or mock turtlenecks). The game of golf is an activity rich with tradition,

---

[3] It is respectfully requested that this Court takes judicial notice of same, pursuant to, but not limited to, Rule 201(c) Fed.R.Evid. *See* The Saint Andrew's Golf Club, *Visitor Info*, SAINTANDREWSGOLFCLUB.COM, https://saintandrewsgolfclub.com/visitor-info (last visited March 31, 2026) (requiring collared shirts, turtlenecks, or mock turtlenecks, and prohibiting collarless shirts); *See also* Trump National Golf Club Hudson Valley, *Guest Policy & FAQ*, TRUMPNATIONALHUDSONVALLEY.COM, https://www.trumpnationalhudsonvalley.com/guest-policy (last visited March 31, 2026) (requiring men wear shirts with collars and sleeves (turtleneck and mock turtlenecks permitted));  Disney, *Golf – Frequently Asked Questions*, DISNEYWORLD.DISNEY.GO.COM, https://disneyworld.disney.go.com/faq/golf/dress-code/ (last visited March 31, 2026) (requiring guests to wear "golf-appropriate attire" including "a collared golf shirt"); Pebble Beach, *Pebble Beach Resorts Frequently Asked Questions*, PEBBLE BEACH.COM, https://www.pebblebeach.com/plan-my-trip/frequently-asked-questions/ (last visited March 31, 2026) (requiring a golf shirt at all golf facilities, except for one). Viera East CDD, *Policies & Procedures*, VIERAEASTCDD.COM, https://vieraeastcdd.com/wp-content/uploads/2024/08/policies-procedures_-attachment-a_fy25-edited.pdf (last visited March 31, 2026) (requiring collared shirts or mock turtlenecks).

including the wearing of a collared shirt; so much so that many golf courses refer to their collared shirt requirement simply as "golf attire."[4] As such, the policy could not be said to shock anyone's conscience as a collared shirt on a golf course is so common place that it is referred to as "golf attire."

Therefore, Plaintiff failed to plead or support that Defendant David Williams actions of enforcing the CDD Defendants' dress code policy "shocked the conscience." Therefore, Mr. Williams' actions cannot be found to have violated Plaintiff's Substantive Due Process Rights under the Fourteenth Amendment to the United States Constitution. As such, Defendant David Williams is entitled to Summary Judgment as a matter of law.

2. **Plaintiff's cause of action against the CDD Defendants for a violation of 42 U.S.C. §1983, specifically a violation of substantive due process, fails because the Defendants policy rationale passes rational basis review. Therefore, Defendants are entitled to Summary Judgment as a matter of law.**

The United States Supreme Court in *County of Sacramento v. Lewis* explained, "While due process protection in the substantive sense limits what the government may do in both its legislative, and its executive capacities, criteria to identify what

_____

[4] *See* County Club of Ocala, *Dress Code & Etiquette*, THE COUNTYCLUBOFOCALA.COM, https://thecountryclubofocala.clubhouseonline-e3.com/golf-page/Dress-Code-and-Etiquette-(2) (last visited March 31, 2026) (requiring "golf attire" including collared shirts); *See also* Champions Gate County Club, *Code of Conduct*, CHAMPIONSGATECOUNTYCLUB.COM, https://www.championsgatecountryclub.com/golf/code-of-conduct (last visited March 31, 2026) ("In staying with the true spirit of the game, proper attire is required including collared shirts"); Celebration Golf Club, *Course Overview: Rules of Etiquette*, CELEBRATIONGOLF.COM, https://www.celebrationgolf.com/course-overview/ (last visited March 31, 2026) ("Proper golf attire is required at all times" including collared shirts).

is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Legislative acts . . . generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples." *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1242 (11th Cir. 2025)). If the allegedly unconstitutional legislative action involves a right that is not fundamental, the Court's substantive due process analysis subjects that action to rational-basis review. *Id.*, at 1239 (citing *Fcc v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)); *See also Foley v. Orange Cnty.*, 638 F. App'x 941, 944 (11th Cir. 2016). "In order to survive this minimal scrutiny, the challenged provision need only be rationally related to a legitimate government purpose." *Foley v. Orange Cnty.*, 638 F. App'x 941, 944 (11th Cir. 2016) (internal citations omitted).

Plaintiff's cause of action relies exclusively on the holding in the case of *DeWeese v. Town of Palm Beach*, 812 F.2d 1365 (11th Cir. 1987), to support his position that he believes the Defendants' dress code violates his substantive due process rights. In *DeWesse*, a topless male jogger was arrested and prosecuted for violating a town ordinance which made it unlawful for a person to travel upon a public street while shirtless. *DeWeese* challenged the constitutionality of the ordinance alleging that the subject ordinance deprived him of rights secured by the First, Fifth, Eight, Ninth, and Fourteenth Amendments to the United States

Constitution. It was alleged that the ordinance was an unconstitutional exercise of Palm Beach's police power because it was not rationally related to the public health, safety, welfare, or other legitimate legislative goal.

In *DeWeese*, the Town of Palm Beach asserted two primary reasons for enacting the ordinance: 1) to stabilize its land values and maintain its role as a residential community; and 2) to maintain the history, tradition, identity and quality of life of the Town. *Id*. at 1367. In support of its reasoning, the Town acknowledged that the regulation had only a minimal effect on property value, and failed to show how male shirtless joggers would adversely affect real estate values. *Id*. The Town also failed to address how the ordinance preserved the residential nature of the town. *Id*. The Court stated that they failed to see how the ordinance was reasonably related to a generalized interest of history, tradition, identity, or quality of life for the town, and found that there is a liberty interest in personal dress within the liberties protected by the Fourteenth Amendment. The Court ultimately declared the town's ordinance unconstitutional.

One of the primary reasons that the *DeWeese* decision does not support Plaintiff's claims is because the holding was limited to a governmental entity limiting the dress of its citizens at large. *Id*. at 1369 (holding only that the Town's interest in regulating the dress of its citizens at large, in the form of prohibiting male joggers from appearing in public without a shirt, is so manifestly weak that

it cannot justify the intrusion upon DeWeese's liberty interest in his chosen mode of dress).

The present case is distinguishable since the Defendants' policy requiring male golfers to wear collared shirts does not regulate the personal dress of the public at large, rather it only regulates those pay an amenity fee, and who choose to participate in playing golf at one of the golf courses owned and/or operated by the CDD Defendants. Significantly, by the Plaintiff's own admission his ability to play golf at the Defendants' golf courses is permitted by virtue of payment of amenity fees. *See Tr.*, at 44: 15-19; *See also Tr.*., at 105: 16-18, As such, those who do not pay the fee (which is tied to residence in the community) are not permitted to play golf at the CDD defendants' courses. While Plaintiff mistakenly refers to this contractual right to access the golf courses as a "right by law," he nonetheless acknowledges that the shirt policy is factually inconsistent with the *DeWeese* matter, as it only applies to individuals who choose to play golf at the Defendants' golf courses, and not the public as a whole.

As stated in paragraph 2 of the Statement of Undisputed Facts section above, the primary purposes of the golf course dress code policy are to maintain traditional golf etiquette and traditional dress code, as well as maintain the standards of the community that entice potential homeowners to purchase real estate within the community and participate in the community lifestyle, including

utilizing the world class golf courses. The collared shirt is a staple of golf attire and tradition, and similar dress policies are enforced by countless golf courses both locally and across the country.[5]

Therefore, unlike in *DeWeese*, where the 11th Circuit Court could find "no history or tradition requiring men to wear a shirt when toplessness is appropriate to the physical activity being undertaken," here the game of golf is an activity rich with tradition, including the wearing of a collared shirt; so much so that many golf courses refer to their collared shirt requirement simply as "golf attire."[6] Because there is abundant history and tradition supporting the Districts' policy that a collared shirt be worn while playing golf, *Deweese* is clearly distinguishable.

Finally, unlike in *DeWeese* where the man who violated the Town's ordinance was arrested and prosecuted, and faced an actual deprivation of liberty, the Plaintiff here faces no deprivation of liberty and may go anywhere he pleases in public while wearing a collarless shirt. The golf course dress code only affects individuals who choose to play golf and enter an area that is not a traditional public forum, nor unconditionally open to the public. Nonpublic forum status is assigned to all government-owned property not traditionally or explicitly

---

[5] See footnotes 3 and 4 found on pages 12 and 13 for list of golf courses with a similar policy.

[6] *See* County Club of Ocala, *Dress Code & Etiquette*, THE COUNTYCLUBOFOCALA.COM, https://www.thecountryclubofocala.com/golf/dress-code-etiquette (last visited May 19, 2025) (requiring "golf attire" including collared shirts); *See also* Champions Gate County Club, *Code of Conduct*, CHAMPIONSGATECOUNTYCLUB.COM, https://www.

designated as a public forum. *See Graham v. American Golf Corporation*, 2009 WL 10680373 at *3 (C.D. Cal.) (Court held that public golf courses do not fit within the confines of either the traditional or the designated public forum.). In fact, Plaintiff testified that he was only removed from the CDD Defendants golf courses, once, and has played golf at their courses at least a dozen times in 2026. *See discussion in Tr.*, at 148, 149, 150: 12-25, 13-25, 1-21. *See also id.*, at 19-20: 22-25; 1-6.

Plaintiff's factual argument is more similar to the case of *Bank v. Katz*, 2009 WL 3077147, at *1 (E.D.N.Y. Sept. 24, 2009), aff'd, 424 F. App'x 67 (2d Cir. 2011). In *Bank*, a New York attorney proceeding *pro se* filed a federal complaint claiming a First and Fourteenth Amendment right to wear jeans and a hat in court. As part of his Fourteenth Amendment claim Bank argued that he possessed a liberty interest in his personal appearance. However, the District Court for the Eastern District of New York (and affirmed by the Second Circuit) held "a court's interests in maintaining proper decorum, etiquette, and respect for the judicial process are reasonably promoted by prohibiting litigants from wearing hats in the courtroom or appropriately admonishing them for wearing casual attire." *Id.* at 3. Similarly, the CDD Defendants' dress code policy is rationally related to their legitimate government interest in maintaining tradition, etiquette, and a respect for community standards on their government-owned golf courses. The sport of golf has a strong emphasis on etiquette, and proper golf attire, including collared

shirts, is a standard requirement of player conduct reflecting the sport's traditional values. The Defendants enforcement of their dress code policy is limited to those patrons who voluntarily choose to enter their golf premises, and does not implicate the dress of the general public, as the Town of Palm Beach's ordinance did in the *DeWesse* case.

As the CDD Defendants' dress code policy is rationally related to their legitimate government interest in maintaining tradition, etiquette, and a respect for community standards on their government-owned golf courses, their policy is sufficient to survive the minimal scrutiny of the rational basis review standard applied by this Court. As such, Defendants are entitled to Summary Judgment as a matter of law.

## V.    CONCLUSION

For the reasons stated above, it is respectfully submitted that all claims against Defendants should be dismissed. Defendants also respectfully request that this Honorable Court award them prevailing party attorneys' fees and costs pursuant to 42 U.S.C. §1988, as the Plaintiff's claims against them were frivolous.

### Local Rule 3.01(g) Certification

Movant hereby certifies that no conferral is required as this is a Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March, 2026, a true copy is served via U.S. Mail and e-mail to: James J. Foster, *Pro se*, 1027 Mallard Lane, The Villages, FL 32162 at: jimfoster@alum.mit.edu .

<div style="margin-left: 50%">

*/s/ Jon Christian Prusinowski*
Jon Christian Prusinowski, Esquire
Florida Bar No.: 1025082
Roper, Townsend & Sutphen, P.A.
255 S. Orange Avenue, Suite 750
Orlando, FL  32801
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Primary e-mail:
cprusinowski@roperpa.com
Secondary e-mail:
jmaffey@roperpa.com
Attorney for Defendant, Sumter Landing Community Development District, Village Center Community Development District, and David Williams

</div>