UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Case No. 5:24-cv-460-TJC-PRL
— — — — — — — — — — — — — — — — — — —

JAMES J. FOSTER, Plaintiff,

VS.

SUMTER LANDING COMMUNITY DEVELOPMENT DISTRICT, VILLAGE
CENTER COMMUNITY DEVELOPMENT DISTRICT, and DAVID
WILLIAMS, Defendants.

—— —— — — — — — — — — — — — — — — — — ——

**RESPONSE OF PLAINTIFF TO DEFENDANTS' MOTION FOR
FINAL SUMMARY JUDGMENT**

I am today filing this Response to Defendants' Motion for Final Summary Judgment ("Defendants' Motion"), Doc. 44. This Response builds upon my own Motion for Partial Summary Judgment ("My Motion"), Doc. 51, filed July 2.

## My Motion

I sued to obtain relief from the "collar mandate" the CDD Defendants (Sumter Landing CDD and Village Center CDD) impose at their Executive Golf Courses, i.e., their policy of barring or expelling from their courses any man whose shirt does not have a collar. The Second Amended Complaint ("SAC") explains how the collar mandate causes heat-related health and comfort problems for me and other elderly residents of The Villages retirement community during the extreme heat of summer in Central Florida.

My Motion requested judgment against the CDD Defendants and was supported by a Foster Declaration, Doc. 51-1. (This Response is likewise supported by that Declaration.) My Motion was limited to Count IV of the SAC (the "*DeWeese* claim") because the Court had bifurcated the state law

claims.[1] Doc. 25. Because the issues between My Motion and Defendants' Motion somewhat overlap, some of this Response repeats portions from My Motion.[2]

## Undisputed facts

My Motion began with a list of  22 Undisputed Facts. Doc. 51 at 3-8. Defendants have not yet filed a response to that Motion, so they might yet disagree with one or more. But nothing in Defendants' Motion itself appears to conflict with any of those facts, so the Court could consider them as to Defendants' motion.

## Disputed facts

To obtain summary judgment, the movant must "show[]that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). It is thus not surprising that Defendants' Motion begins with a section headed STATEMENT OF UNDISPUTED FACT, Doc. 44 at 2-7.

---

[1] Defendants' Motion asks the Court to dismiss "all" claims, not just the *DeWeese* claim. Doc. 44 at 19. I assume this was an error, because Defendants' Motion does not otherwise discuss the state law claims. Further, the bifurcation would bar the filing of a motion directed to the state law claims at this time. Accordingly, this Response will not discuss the state law claims.

[2] Some repetition is necessary because Local Rule 3.01(h) would not allow this Response to "incorporate by reference … part of any other motion, legal memorandum, or brief."

Despite that heading, Defendants inserted in that section, as numbered paragraph 2, *id.* at 3, a lengthy portion of one of their own interrogatory answers, which portion contains various contentious statements I would vigorously dispute:

> The sport of golf has a strong emphasis on etiquette; proper golf attire is a standard requirement of player conduct reflecting the sport's traditional values. Most golf courses are outdoors, often in warm or temperate climates. Polo shirts are designed to keep players cool and comfortable. The breathable fabrics wick away moisture, while the open collar allows for better air circulation around the neck. Modern golf attire incorporates advanced materials that enhance ventilation and keep the wearer dry, essential for maintaining focus and performance on the course. Protection of player health and safety have been determined, among other reasons, to justify the requirement of proper golf attire.
>
> The Villages lifestyle offers world class golf courses and facilities. Incorporating traditional golf etiquette and attire upholds the quality-of-life standards that are unique to The Villages lifestyle. New residents buy homes because of this lifestyle and maintaining community standards has been the foundation of continued community satisfaction and new home sales. Golf attire is one component of the overall look and feel of the community infrastructure that the Defendant was created to finance, operate, and maintain. The Defendant is obligated to maintain and operate the amenities including the golf courses so that they provide recreational services and activities of approximately the same quality, frequency, character and duration over time. The standards to which the Defendant maintains the amenities, which include the dress code at the golf course, support the overall look and feel of the community and the desirability of The Villages as a community in which to reside or own real estate.

This interrogatory answer, which Defendants prepared themselves, cannot be bootstrapped to support their own Motion because the hearsay

rule, Fed. R. Evid. 801(c), 802, excludes it. Although Rule 56 (c)(1)(A) would allow a party to cite to "interrogatory answers," Rule 56(c)(2) allows the adverse party to object to the cited material if it "cannot be presented in a form that would be admissible in evidence." *Luster v. Illinois Dep't of Corr.*, 652 F.3d 726, 743 n.2 (7th Cir. 2011) ("[A] party cannot use his own interrogatory answer, which is almost certainly hearsay, when offered by that party himself to prove the truth of its content, to support  or oppose summary judgment.")

Apart from the interrogatory answer itself, Defendants' Motion does not cite any evidence to support the statements that answer contains.

Further, much of what is alleged (without evidence) in the interrogatory answer is contradicted by admissible evidence in the Foster Declaration, Doc. 51-1. See ¶¶40-42[3] (admissions by Defendants that collar mandate does not promote health or safety); ¶43-45 (evidence that collar mandate is at odds with, rather than supports, actual look and feel of The Villages community); ¶¶46-49 (evidence collar mandate detracts from quality of life in The Villages); ¶¶50-51 (no evidence the collar mandate has an effect on home values).

---

[3] All paragraph number designations (¶) in this Response are to the corresponding numbered paragraphs in the Foster Declaration, Doc. 51-1.

Finally, when considering a motion for summary judgment, the court is required to view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 255(1986). As to Defendants' Motion, I am the non-moving party.

Viewing the evidence I have submitted in the light required, and because Defendants have not submitted admissible evidence to support the factual contentions in their interrogatory answer, the Court must thus assume, for purposes of evaluating Defendants' Motion:

1) a collar mandate is not a "standard requirement of player conduct";

2) a collar mandate does not reflect "traditional values";

3) a collar mandate does not "protect player health and safety";

4) wearing a polo shirt over a collarless T-shirt —when specifically contrasted with wearing just a collarless T-shirt—does not "enhance[] ventilation and keep[] the wearer dry, essential for maintaining focus and performance on the course";

5) the collar mandate does not uphold "quality-of-life standards that are unique to The Villages lifestyle";

6) new residents do not "buy homes" because of the collar mandate;

7) the collar mandate has not been "the foundation of community satisfaction and new home sales";

6

8) in the actual "overall look and feel of the community infrastructure that the Defendant[s were] created to finance, operate, and maintain," a substantial portion of men wear collarless shirts while outdoors;

9) Defendants are not "obligated to maintain" a collar mandate;

10) the collar mandate does not "support the overall look and feel of the community;" and

11) the collar mandate does not support the "desirability of The Villages as a community in which to reside or own real estate."

## ARGUMENT

A. **The claim against the CDD Defendants.**

The claim as to the CDD Defendants[4] is common to both motions, and is based on *DeWeese v. Town of Palm Beach,* 812 F. 2d 1365 (11th Cir. 1987). Defendants' arguments as to the CDD Defendants appear on pp. 13-19 of Defendants' Motion.

1. **The *DeWeese* precedent controls the outcome as to Amended Count IV as to the CDD Defendants.**

Defendants' Motion argues the Court's action is subject to rational basis review, and I agree. Because rational basis review was the same legal standard as was applied in *DeWeese*, a comparison of the facts here with

---

[4] My Motion does not seek summary judgment against Williams, but rather states I would voluntarily dismiss my claim against him if the Court grants judgment against the CDD Defendants. Doc. 51 at 1n.2.

those in that action would be appropriate; and would seem to dictate an identical result.

The plaintiff in *DeWeese* was a male lawyer and jogger who preferred to do his jogging "during the hot, humid Florida summers … without a shirt on." *Id*. at 1365. To prevent men from jogging shirtless, the town passed an ordinance that "prohibits its citizens from appearing downtown without a garment covering the upper portion of their bodies." (As shorthand, I refer to that prohibition as a "shirt mandate.") The court held the shirt mandate unconstitutional - as applied to the plaintiff - under Fourteenth Amendment substantive due process standards because the prohibition was "not rationally related to any legitimate Town interest." *Id.*

The court cited *Lansdale v. Tyler Junior Coll., 470* F. 2d 659, 663 (5th Cir. 1972) (en banc), as making clear that a "liberty interest in personal dress" is constitutionally protected. 812 F.2d at 1367.

The court, applying rational-basis review, found that the "town fathers' distaste for the personal dress of DeWeese, a citizen at large, as he jogs the town's streets is simply not a legitimate governmental interest." *Id*. at 1369.

It is difficult for the CDD Defendants to distinguish this precedent, because the collar mandate is harder to defend than the shirt mandate in

8

*DeWeese*. In downtown Palm Beach the sight of a shirtless jogging man might be somewhat jolting, because most men in that area are fully clothed in public. And perhaps some citizens of Palm Beach may be offended by the shirtless jogger's exposure of substantial additional skin. This might have led to the "town fathers' distaste" the court identified.

By contrast, in The Villages retirement community there is nothing jolting about the sight of a man with a collarless shirt. Shirts of that style are worn by many male members of the general public everywhere, including in all commercial establishments, government offices, and (non-golf) recreational facilities, particularly in summertime. ¶¶44-47. Indeed, they are ubiquitous outdoors in the summer. And there is little to no difference in skin coverage between a collarless and a collared shirt.

If a collar mandate is oppressive in the extreme heat of summer in Central Florida, ¶¶6-8, 12, why impose it on Executive Golf Courses in a retirement community? When pressed on this issue in discovery, the CDD Defendants acknowledged, albeit grudgingly, the collar mandate has no effect on course operations. ¶¶40-41. They likewise acknowledged they have no evidence that excluding collarless golfers benefits public health or safety or otherwise promotes the general welfare of others on the Executive Golf

9

Courses. ¶¶40-42. Finally, they do not dispute men wearing collarless shirts are otherwise universally welcome in The Villages community. ¶44.

In discovery after Defendants' Motion was filed, they acknowledged the collar mandate provides no health or safety benefits. ¶42. And they cannot dispute the elderly, including me,  are especially vulnerable to the adverse effects of extreme heat.

It would seem the CDD Defendants impose a collar mandate simply because they have a "distaste" for men wearing a shirt without a collar. But in *DeWeese,* the court described the "distaste" of the Palm Beach town fathers for the shirtless way the jogger dressed as not justifying a mandate to wear a shirt, as applied to the plaintiff there. The same court would surely rule identically as to the collar mandate, as applied to me.

Unable to distinguish *DeWeese* on its facts, the CDD Defendants make the vague argument in their interrogatory answer that they want to "maintain the standards of the community that entice potential homeowners to purchase real estate within the community." Doc. 44 at 16. But they offer *no evidence* the collar mandate on the Executive Golf

10

Courses has any effect on the desire to purchase homes, let alone an effect that would support, rather than undercut, their position.[5]

Palm Beach had similarly argued that its ordinance was enacted to "stabilize land values." The court, however, observed the "Town has not suggested how a few male, shirtless joggers would adversely affect real estate values, and our most creative imagination cannot conjure up any rational way." 812 F.2d at 1367. The CDD Defendants fare no better, as they have acknowledged, not surprisingly, having no evidence that the collar mandate has any effect on home values. ¶¶50-51.

The CDD Defendants also argue, with equal vagueness, that they want to "maintain the standards of the community that entice potential homeowners to… participate in the community lifestyle." Doc. 44 at 16-17. But they offer *no evidence* that the collar mandate does that. To the contrary, discovery has established that the collar mandate conflicts with (rather than upholds) existing clothing and dress standards in The Villages. As is reflected by the absence of a collar mandate anywhere else in The Villages, imposing a collar mandate on the Executive Golf Courses does not "maintain community standards," but rather conflicts with them.

---

[5] If anything, the collar mandate would be more likely to discourage potential buyers because it infringes on their personal choice and makes them less comfortable on the Executive Golf Courses in hot weather.

### 2. **The collar mandate, like the prohibition in *DeWeese*, applies to "citizens at large."**

The Defendants argue that, unlike the shirt mandate in *DeWeese*, the collar mandate is not directed to "citizens at large" because it does not affect "the public as a whole," as it is directed to only male citizens on the Executive Golf Courses.[6] Doc. 44 at 15-16. Defendants' "public as a whole" criterion, however, conflicts with the facts in *DeWeese* itself, where the ordinance did not apply to the public as a whole because it excluded members of the public who were on "private property [or] public bathing beaches and the immediate vicinity of public bathing beaches," 812 F. 2d. at 1371.

The CDD Defendants misunderstand what the *DeWeese* court meant by "citizen at large," and its context. That opinion discussed several cited cases that had upheld dress and grooming restrictions. The court distinguished those cases on the ground the restrictions were imposed by the governmental entities only on their own employees, as opposed to "citizens at large": *Kelley v. Johnson*, 425 U.S. 238, 247-49 (1976) (police officers); *Miller v. School District No. 167*, 495 F.2d 658 (7th Cir. 1974)

---

[6] Defendants also argue that the collar mandate affects only those who pay amenity fees. Doc. 44 at 16. That is not correct. The collar mandate applies to all males who play the Executive Golf Courses, including those (such as nonresident guests) who do not pay amenity fees.

(public school teachers); or were limited to students in high school or lower grades, *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972). In each opinion, the respective court explained why the particular relationship between the plaintiffs and defendants justified the restrictions.

For example, *Kelley* noted that the employed police officers in that case had duties different from those of the "public at large," and thus the police department could make a "choice of organization, dress, and equipment for law enforcement personnel" that could not be imposed on "the public at large." 425 U.S. at 245.

Other cases have used "citizen at large" similarly. *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 599 (2008) ("citizen employees" of the government are not "citizens at large"); *Associated Builders & Contractors Fla. First Coast Chapter v. Gen. Servs. Admin.*, 174 F.4th 26, 39 (11th Cir. 2026) (government has a much freer hand in dealing with its "own employees and contractors" than it does "when it brings its sovereign power to bear on citizens at large").

The plaintiff in *DeWeese* was not a town employee (or one of the town's public school students), and thus he was described as a "citizen at large." 812 F. 2d at 1368. Similarly, I am not an employee of the CDDs (or a public school student), but rather a "citizen at large."

Under the precedents *DeWeese* distinguishes, the CDD Defendants *could* impose a collar mandate on their own employees — at least when they are working at the courses as employees, because when working there they are not "citizens at large." But *DeWeese* would not allow them to impose a collar mandate on non-employees, as the latter are citizens at large.

Defendants' argument that a regulation must "appl[y] to the public as a whole" to be held unconstitutional as applied to an individual, Doc. 44 at 16, does not make sense. Not only does it conflict with the facts in *DeWeese*, as discussed above, but under Defendants' argument, the shirt mandate in Palm Beach would have been upheld if it had applied only to residents of Palm Beach and not to outsiders who jogged shirtless there — an inexplicable result. They cite no case or other legal authority to support their argument. Nor do they offer any policy reason for such an arbitrary criterion.[7]

In all the reported cases, including those *DeWeese* distinguishes, a citizen at large is simply any citizen who does not have a specific

---

[7] Defendants argue that municipal golf courses have "nonpublic forum status," because they are not a traditional public forum, nor unconditionally open to the public, citing *Graham v. Am. Golf Corp.*, 2009 WL 10680373 (C.D.Cal). Doc. 44 at 18. Those are classifications applied in First Amendment speech cases. This is not a First Amendment speech case.

relationship (such as employment) with the governmental entity, where the restrictions could be based on that relationship.

### 3. *DeWeese* requires the court to perform a balancing test, weighing the strength (or weakness ) of the government's interest against my liberty interest and comfort and health considerations.

Although *DeWeese* derided the "Town's generalized interest in history, tradition, identity, and quality of life" as a "mere circumlocution for enforcing the town fathers' view of the proper fashion for personal dress in Palm Beach," 812 F.2d at 1368 (footnotes omitted), the court did not hold the town had no interest in regulating dress. Rather, the narrow holding in *DeWeese* was that "the Town's interest in regulating the dress of its citizens at large, in the form of prohibiting male joggers from appearing in public without a shirt, is so manifestly weak that it cannot justify the intrusion upon DeWeese's liberty interest in his chosen mode of dress." *Id*. at 1369.

It thus seems a court must perform a balancing test, weighing the strength (or weakness) of the government's interest — in mandating, in this case, uniformity of dress — against the citizen's liberty interest in his chosen way of dress, as well as his comfort and health considerations.

### 4. My liberty interest and comfort and health considerations substantially outweigh the CDD Defendants' interests.

15

If there were no collar mandate, some men, such as myself, would wear a non-collared shirt on the Executive Golf Courses when extreme heat occurs.  But many men (perhaps more) would still choose to wear a collared shirt *and would have the freedom to do so*!

The Defendants contend that a collared shirt is a "staple of golf attire and tradition," Doc. 44 at 16-17, which I dispute. But even if that were so, all that would mean is that the government should always *allow* men to wear collared shirts on the Executive Golf Courses, to preserve that tradition. Dispensing with the collar mandate would still allow all males who want to wear a collared shirt to continue to do so. Those who believe a collared shirt is more traditional and, for that reason, choose to wear one, will wear one.

The collar mandate, however, imposes uniformity, forcing the wearing of a collar even on  those who do not agree a collar is traditional. As thoroughly discussed in the listing of undisputed facts, Doc. 51 at 3-8, the Defendants have identified no legitimate interest served by requiring *all* men to wear a collared shirt, particularly when it creates discomfort and

16

heat-related health issues for some.[8] Absent from Defendants' Motion is any claim that the government or the citizenry reaps an advantage from imposing uniformity as to wearing or not wearing of collars or an explanation of what that advantage is.

It thus appears the CDD Defendants have imposed a collar mandate for the simple reason that collared shirts represent their "view of the proper fashion for personal dress" on the Executive Golf Courses. Compare *DeWeese*, 812 F.2d at 1368. The CDD Defendants express their "distaste for the personal dress" of those who wear non-collared shirts by banning those individuals from the Executive Golf Courses. Compare *id.* at 1369. Government officials can, of course, have sartorial preferences, but *DeWeese* holds they may not impose those preferences on the members of the public at large.

The CDD Defendants ask the Court to consider that several other golf courses they identify, most of which are private[9], appear to require men to

---

[8] The military and police forces have adopted policies that impose uniformity of dress on their members or employees, which the courts have upheld for various reasons. See *Kelley*. Unlike men in the uniformed forces, however, there is no reason for *all* male golfers on the Executive Golf Courses to dress identically.

[9] Only one of their examples was a municipal course, although with over a thousand municipal courses in the United States I assume more could be found.

wear a collar, citing their websites as evidence and asking the Court to take judicial notice.[10]  Doc. 44 at 17. Although *DeWeese* did note that the fact that shirt mandates are rare provided support for its decision, the court also stated that consideration was "not controlling." 812 F.2d at 1369. If the collar mandate does not pass the balancing test of *DeWeese*, the fact that some others have that same policy will not save it.

To  be sure, private clubs can legally impose "dress codes," and many do, but if the examples the CDD Defendants cite are representative, they are simply "dress up" requirements. There would be no other purpose for a collar mandate, as there is no utility of a collar as related to golf. The collar on a shirt has no function in the game of golf; unlike the shirt itself, the collar is simply ornamentation.[11]

---

[10] From the websites it is not clear the extent to which the requirement is actually enforced on the course, particularly on hot days, or simply treated as a preferred mode of dress. Nor can one tell, from the website, whether the requirement, even if otherwise enforced, would be waived for elderly golfers who suffer extreme discomfort or health risks.

[11] A collared shirt is not uniquely identified with golf. Collared shirts can be found in countless situations that have nothing to do with golf. If one saw a man who was wearing a collared shirt walking down the street in downtown Jacksonville or Ocala, one would scarcely say "his shirt has a collar; therefore he must be going to play golf."

Unlike private clubs, most of which promote their exclusivity, municipal courses, like the Executive Golf Courses here, are government facilities that are meant to be usable by all citizens, not just those in the upper strata of society. I dispute there is a "tradition" of mandating only collared shirts on municipal courses and barring from the course men with collarless shirts, as my experience belies that claim. ¶27.

In any event, there is a considerable leap between what the Defendants loosely describe as "tradition" and the government's imposing a mandate. It may be traditional for some to wear green on St. Patrick's Day, and the government, in the spirit of the holiday,  could encourage people to do so. But the Constitution would not allow a "green clothing only" mandate.[12]

Here, the CDD Defendants are free to recommend or suggest any attire they consider to be more traditional, but, given the discomfort factor and health risks, imposing a collar mandate violates Fourteenth Amendment substantive due process, as applied to me.

---

[12] Defendants cite *Bank v. Katz*, 2009 WL 3077147 (E.D.N.Y. 2009) as a case that upheld dress restrictions. That, however, was in a courtroom setting. Doc. 44 at 18. Neither I nor the opinion in *DeWeese* suggests a court cannot impose dress requirements in a courtroom setting.

19

## B. The claim against Williams.[13]

The current Defendants' Motion, Doc. 44 at 9-13, argues, as to Williams, that the legal standard for him under §1983 is "shocks the conscience," and that his conduct did not meet that standard.

The identical argument as to Williams had been raised in Defendants' second motion to dismiss. Doc. 34 at 9-11. In my response there, I pointed out that the "shocks the conscience" test applies only in actions for damages; and there was no need to expand it to a claim for only declaratory or injunctive relief.  Doc. 37 at 9-11. I cited several cases, including from the Supreme Court,[14] stressing the importance of §1983 in protecting against arbitrary and irrational continuing action. *Id*. at 12.

---

[13] Williams was added as a defendant after the CDD Defendants, early in the case, had claimed sovereign immunity. They included the immunity defense in their first motion to dismiss, Doc. 9, which the Court denied. They dropped the argument in filing their second motion to dismiss, Doc. 34, and do not argue sovereign immunity in their current motion either.

If the CDD Defendants no longer claim sovereign immunity, I would consent to dropping Williams as a party.

[14] *Wood v. Strickland*, 420 U.S. 308 (1975); *D'Aguanno v. Gallagher*, 50 F. 3d 877 (11th Cir. 1995); *Fortner v.Thomas*, 983 F.3d 1024 (11th Cir. 1993); *Daniel v. Williams*, 474 U.S. 327 (1986); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978); *Eastern Enters. v. Apfel*, 524 U.S. 498 (Kennedy, J. concurring); *Lingle v. Chevron USA Inc.*, 544 U.S. 528 (2004); *Winston v. City of Syracuse*, 887 F.3d 553, 566 n.11 (2d Cir. 2018).

The Court denied the motion, thus rejecting Defendants' argument, presumably on the basis I had argued. As that decision is the law of the case on this issue, the Court should not allow it to be re-litigated.

In any event, Defendants were clearly on notice - from my prior briefing - that the problem with their argument was that it does not apply to actions for equitable relief, where there is no claim for damages. Oddly, although Defendants now repeat the same argument the Court had rejected, their current Motion does not respond to, or even mention, the arguments I made or the cases I cited in my earlier response, upon which the Court presumably relied.

If Defendants have arguments or authorities responsive to the arguments I had made and cases I had cited on the earlier motion, fairness required them to articulate those in the current Motion — rather than hold them for a Reply, to which I would not be allowed to respond. Local Rule 3.01(e). By not including those arguments or authorities in the current Motion, they have forfeited using them now. *United States v. Campbell*, 26 F.4th 860, 871-72 (11th Cir. 2022).

## Conclusion

For the reasons set forth above, the Court should deny Defendants' Motion for Final Summary Judgment.

21

## Certificate of Service

I certify I am serving this document on counsel for Defendants by filing it with the Court's CM/ECF system on July 15, 2026.


/s/ James J. Foster

James J. Foster, Esq.
Florida Bar No. 1062462
jimfoster@alum.mit.edu
1027 Mallard Lane
The Villages FL 32162
(352)530-0517
July 15, 2026

22